```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          16 CR 371 (RA)

JASON GALANIS,

                 Defendant.

------------------------------x
                                        New York, N.Y.
                                        July 11, 2016
                                        2:00 p.m.

Before:

                    HON. RONNIE ABRAMS,

                                        District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
REBECCA MERMELSTEIN
BRIAN ROGER BLAIS
     Assistant United States Attorney

LISA SCOLARI
     Attorney for Defendant
```

1                    (Case called)

2                    THE COURT:  Good afternoon.  I wanted to hold this
3      conference because it's come to my attention that Mr. Galanis
4      does not appear to have counsel representing him in this
5      action.

6                    He had counsel for purposes of bail, but he doesn't
7      have counsel going forward, and I just want to make sure that
8      we're settled on who his counsel will be so that counsel can
9      get up to speed on everything.

10                   MS. SCOLARI:  Your Honor, that's not something that we
11     can resolve right now because Mr. Galanis does not yet have
12     counsel.  What is happening is he's got a bail appeal pending
13     in the Second Circuit -- it's an emergency motion -- and he
14     hopes to hear relatively soon.

15                   That will determine how he goes forward because right
16     now, while he's locked up, it's very difficult for him to
17     marshal his assets.  Once that's determined, then he will
18     figure out where he is.

19                   Obviously, if he's going to be out, there would be a
20     bail application in this court.  A bail resolution has been
21     deferred, but what has been suggested to me by his appellate
22     counsel is he will need at least a month and basically see
23     where he is, whether he's in or out, in terms of marshaling
24     resources and hiring counsel.

25                   THE COURT:  Okay.

1              MS. SCOLARI:  Your Honor, one of the things that the
2     Court can consider doing is, without having a financial
3     affidavit, just keeping me on until such time as he knows the
4     situation.  Then I can communicate with him.  I can communicate
5     with the Court.  I can keep the parties updated on what's
6     happening.
7              I don't think that that would be a terrible burden on
8     the CJA funds.  I think that if the Court wanted to do that for
9     a temporary period of time, that would be fine with me.  I
10    don't expect it will run into a lot of time.
11             THE COURT:  Does the government have any position on
12    this?
13             MS. MERMELSTEIN:  Your Honor, I think the issue here
14    is the defendant resides in California.  He was arraigned
15    before your Honor on June 8.  We're now a month later.
16             I guess we'll have to disagree about the likelihood
17    he's going to prevail on his motion in the Second Circuit, but
18    he needs to have a lawyer.  I appreciate Ms. Scolari's offer to
19    sort of stand in pending a resolution.
20             But, as the government explained at the conference,
21    there's a large amount of discovery in this case that's being
22    produced, and we've set a conference date quite a ways out,
23    both to let defense counsel review discovery and get up to
24    speed.
25             THE COURT:  What's the date of that next conversation?

1    MS. MERMELSTEIN:  It's in early November.  I think
2    it's the 4th, but I didn't consult my calendar.  I guess what
3    we don't want to have happen and what we fear is going to
4    happen, even with Ms. Scolari's offer, is we're going to show
5    up in November.
6         Ms. Scolari is going to assist in communicating with
7    the Court, but she's not going to have reviewed the voluminous
8    discovery not being able to represent Mr. Galanis in full.
9         And then we're going to set a trial date, and there's
10   going to be a motion.  I don't know if there will be motions.
11   I just got here.  I just don't think that's acceptable.
12        I understand Mr. Galanis is incarcerated, but
13   incarcerated defendants find ways to retain counsel all the
14   time.  He has retained counsel in his case before Judge Castel,
15   and I think what I would propose is that the Court set a date
16   four weeks from today by which time he has to have counsel or
17   otherwise know how he wants to proceed.
18        THE COURT:  Ms. Scolari, do you want to respond to
19   that?  I do share a number of the government's concern.
20        MS. SCOLARI:  I understand their concern, and I think
21   Mr. Galanis would like to move his case forward as well, and
22   what he's being quoted in terms of fees it's not his fault.
23        It's not something that anybody can expect him to be
24   able to resolve if he can't personally deal with the issues
25   that have to be dealt with.  He's got property that's

1  encumbered.  He's got property that he can't do anything about
2  while he's in jail.
3         So I think it's reasonable to give him the opportunity
4  to see what's going to happen in the circuit.  I think his
5  counsel has an opposite view than the government, that there is
6  a good chance that he's going to be released.
7         Obviously, the matter will come before the Court in
8  terms of your determination as to whether or not you would set
9  additional bail or agree to release on -- I think it's
10 $10,000,000 that he's got on the other case.
11        The point is that not giving him the opportunity --
12 are you going to come back in a month and say, okay.  You don't
13 have a lawyer.  Now what?  Are you going to force him to have
14 CJA but he can't qualify?
15        THE COURT:  He can at least try to figure it out.  It
16 sounds like no one is doing anything to try to figure it out.
17        MS. SCOLARI:  Here is the thing the Court should know.
18 He is trying.  He's doing everything he can.  Every phone call
19 is monitored.  He's only got X amount of minutes in jail.
20 Every email is monitored.
21        The government is looking at every single thing he
22 does.  Any discussion of assets or disposition of assets or
23 raising money to hire counsel -- it's all there for the
24 government to review.
25        Quite frankly, if I were him or anybody else in his

1  situation who is charged with a major financial crime, I
2  wouldn't want any of those discussions open to the government's
3  view.
4         It is virtually impossible for him to get an
5  unmonitored phone call.  So his lawyer now that's retained is
6  in California.  He doesn't have somebody like me here in
7  New York who could go and see him.
8         So my suggestion is not just to keep the Court
9  informed, but perhaps I could see him in jail, and I could help
10 with communication that would move things forward.
11        That's really up to the Court.  I don't think the
12 government has any recognition of the difficulty of the
13 situation.  Because not only have they never been locked up,
14 but they don't understand the limitations of being at MCC.
15        THE COURT:  What's he going to do if his appeal is
16 denied?
17        MS. SCOLARI:  Then he's going to have to figure out
18 something obviously.  Perhaps at if the Court wants to appoint
19 me to try to help move things forward in terms of
20 communications, in terms of marshaling his assets in the
21 interim so he can try to move forward while he's waiting.
22        There's nothing more that I can offer.  People have
23 encumbered assets, and people have assets that are not
24 something that you can resolve with a phone call.  His
25 situation is complicated.  So it's not something he can do

1   easily on his own from MCC.
2           THE COURT:  I'm going to put this off for one more
3   month.  I do expect by that time -- the estimate that you've
4   gotten on the appeal is approximately one month.  Is that
5   right?
6           MS. SCOLARI:  Yes.  Obviously, we'll come back
7   whenever you want us here.
8           THE COURT:  Right.
9           MS. SCOLARI:  My suggestion was he needs at least a
10  month because, first we're waiting for the appeal to be
11  resolved.  Then, if he's released, he needs some time.
12          If he's in jail, he's probably going to need more
13  time.  If you want me to try to work with him in the interim,
14  I'm happy to do that to see what I can do to move things along.
15          MS. MERMELSTEIN:  Just to be clear on time,
16  your Honor.  The appeal is being taken on submission.
17          THE COURT:  We don't know when they're going to decide
18  it.
19          MS. MERMELSTEIN:  I appreciate Ms. Scolari's efforts
20  to be of assistance to the Court.  If the defendant is going to
21  receive CJA services, he ought to fill out a CJA affidavit.
22          THE COURT:  I agree with that.  We're grateful that
23  you're here today.
24          MS. SCOLARI:  He's in an impossible position.  So, if
25  you want somebody to help him move things forward, I'm happy to

1   do that. On the other hand, if the government is objecting,
2   they just can't have it both ways. They can't say you have to
3   move things forward. You have to get a lawyer, but you can't
4   have CJA because we want a financial affidavit.
5           THE COURT: Again, if his appeal is denied, he's going
6   to be in this position. You keep describing it as an
7   impossible situation. It's not that uncommon to have
8   defendants who are incarcerated that have to figure these
9   issues out.
10          MS. SCOLARI: They are not defendants in Mr. Galanis'
11  position. They don't have complicated financial entanglements.
12  They don't have substantial property with a lot of
13  encumbrances.
14          THE COURT: Some do.
15          MS. SCOLARI: Most don't. Also they usually have
16  somebody who can come and see them. He's got counsel in
17  another case that's in California. So he can't communicate
18  with somebody that he can sit down with and say, these are the
19  things that need to be checked out.
20          THE COURT: Why doesn't he have his counsel come visit
21  him here?
22          MS. SCOLARI: I guess he could do that, but the point
23  is for the man to come all the way from California to sit down
24  in jail.
25          THE COURT: Then maybe he can hire local counsel if he

1  can afford local counsel.

2            MS. SCOLARI:  He doesn't have the funds.  That's the
3  issue.  I'm not suggesting that you appoint me or some other
4  counsel --

5            THE COURT:  If he doesn't have the funds, he can fill
6  out a financial affidavit to that effect, and I can appoint you
7  or someone else to assist him.  The question that is unanswered
8  is if he doesn't have the funds, why can't he fill out a
9  financial affidavit?

10           MS. SCOLARI:  The financial affidavit requires him to
11 answer and give some information that he doesn't know the
12 answer to.  Some of his assets are private equity assets.  The
13 fact that he's been arrested and indicted multiple times
14 affects the value of those assets.

15           He does not know what they are.  So he can't even
16 really give correct information to fill out the financial
17 affidavit.  Obviously, we would be very concerned that he not
18 give anything other than accurate information.

19           THE COURT:  His existing attorney can't figure that
20 information out from California?

21           MS. SCOLARI:  I don't believe so, not without meeting
22 with him and then looking into or gathering additional
23 information, because they can't have an unmonitored phone
24 conversation.

25           The government is salivating over whatever they can

1  get from recorded phone calls, emails. So it's just supplying

2  whatever fuel they're looking for.

3       You've seen this in drug cases where they produce all

4  the jail calls or they produce all the emails. There's no

5  private communication unless someone can see him in person.

6       THE COURT: Look. I understand the concern. If he

7  has an attorney, even if the attorney lives elsewhere, they can

8  come visit him, or he can hire local counsel. Or, if he can't

9  afford to hire counsel, he can fill out a financial affidavit

10 and get a CJA attorney appointed.

11      MS. SCOLARI: Judge, I've done the best I can to

12 explain it to the Court. His lawyer who is preparing for

13 trial -- not preparing right now but who is expecting to try

14 the first indictment in September hasn't even been fully paid.

15 I'm not saying he's not going to work on that case, but the

16 point is there haven't been funds to fully pay him.

17      So there are issues that seem pretty clear to me in

18 terms of him being between a rock and a hard place.

19      THE COURT: Look. What I'm going to do is I'm going

20 to put this off for one month. At that time I am going to

21 require him to do one or the other, to either hire an attorney

22 who is going to represent him in this action who is going to

23 start to prepare and review discovery or, if he doesn't have

24 the funds, to get the information he needs to get to fill out a

25 financial affidavit.

```
 1              MS. SCOLARI:  Yes.
 2              THE COURT:  So why don't we put this --
 3              MS. SCOLARI:  Let me ask you this:  Are you going to
 4    appoint me for the interim?
 5              THE COURT:  I will if he fills out a financial
 6    affidavit.
 7              MS. SCOLARI:  So, Judge, you're leaving him with no
 8    resources whatsoever.  You're not giving him any way to move
 9    forward.
10              THE COURT:  I'm happy to appoint one, but if he can't
11    even represent to me that he can't afford an attorney, a CJA
12    attorney should not be appointed for him.
13              If he can represent that -- again, I'm having trouble
14    understanding why it is that he can't have anyone get enough
15    information for him when he has an attorney so that he can fill
16    out a financial affidavit?
17              MS. SCOLARI:  Judge, let me give you an example.  He's
18    got two properties that the government has indicated to me, one
19    in New York that's worth about $3,000,000 and one in California
20    that's worth about $8,000,000.
21              The property in New York has been used to secure part
22    of his $10,000,000 bond.  So that property can't be sold in
23    securing his bond.  The property in California his family lives
24    in.  So he can't be required to sell his family home to hire a
25    lawyer.  Besides that, there are a number of encumbrances on
```

1  that property.

2  So it's just not that simple. If you hear about a
3  $3,000,000 and an $8,000,000 property, you think oh, the guy
4  can hire a lawyer. But it's just not that straightforward.

5  THE COURT: I haven't denied anything yet. I'm just
6  asking for enough information to make that assessment. You're
7  talking as if I have denied a request for him to be appointed
8  counsel, and I haven't.

9  All I'm saying is that he is no different than any
10  other defendant in this building in the sense that if he wants
11  an attorney to be paid for by the government, that he's got to
12  represent that he can't afford one and provide enough
13  information so that I can make that assessment. That doesn't
14  seem to be a lot to ask.

15  MS. SCOLARI: I'm here at the Court's request, and I'm
16  suggesting what I might be able to do to move things along.
17  He's, I think, fully intending to hire counsel when he's able
18  to do it.

19  The reason he hasn't yet is because he hasn't been
20  able to because of the encumbrances and the things that I've
21  explained. As I said, all I can do is tell the Court the
22  situation and leave it to you.

23  THE COURT: Does the government want to be heard?

24  MS. MERMELSTEIN: I think your Honor has made the
25  points the government thinks are important here. I will note I

1    guess two things:  One, the trial on the first case is two
2    months away.  It's the government's understanding that
3    Mr. Maducco who represents Mr. Galanis in the first case is
4    coming next week to meet with him.
5             So, to the extent Mr. Galanis needs some assistance
6    from that attorney in gathering information, that should be
7    possible.  I'm also somewhat mystified about the idea that he
8    can't understand what his own assets are.
9             It is true that the properties that he owns are
10   encumbered because he used money obtained through the frauds
11   that are alleged here to pay for those residences.  So the
12   government has put liens on them.
13            But he can represent to the Court what the equity is
14   and what the situation is, and your Honor can then decide
15   whether or not he's entitled to CJA counsel.
16            I don't think his hesitation to sign a CJA affidavit
17   frankly has anything to do with his lack of knowledge about his
18   assets.  If the taxpayers are going to pay for his lawyer, it
19   should be because he can't afford one.  If he can't afford one,
20   he should tell the Court.  It's just not that complicated.
21            MS. SCOLARI:  Well, your Honor, it's easy for the
22   government to say that they don't think Mr. Galanis
23   representing things truthfully.  Quite honestly, the government
24   doesn't normally weigh in on whether somebody is qualified for
25   assigned counsel anyway.  That's up to the Court.  The

1  government can say what they wish.  I've made the situation as
2  clear as I can for the Court.
3              THE COURT:  Let's put this off for a month.
4  Mr. Galanis, you should be working in that time to get this
5  information so that you can submit a financial affidavit to me,
6  and I can make a determination as to whether you're entitled to
7  counsel.
8              Obviously, it depends on if you want counsel to be
9  appointed, and it depends on if you are able to afford counsel.
10 You should do your best to figure that out.  I'm giving you a
11 month to do that.
12             When we meet again, I want you to be in a position to
13 tell me if you intend to retain counsel or not.  If you're not
14 in a position, again, to afford counsel, to provide a financial
15 affidavit supporting that.  So why don't we put this off for
16 approximately one month.
17             THE DEPUTY CLERK:  August 12 at 12:30.
18             THE COURT:  So we're going to meet again then.
19 Ms. Scolari, I am going to ask you to come back then if this is
20 not resolved beforehand.  If it is and the circuit rules,
21 please let me know as soon as possible.
22             MS. SCOLARI:  Your Honor, if you're going so to have
23 me come back, I have to check and see whether or not that's a
24 good date for me because I was assuming that I was not going to
25 be on the case since I'm not assigned.  I can appear on the

1  12th, but it's got to be earlier.
2           THE COURT:  I can do it earlier.  Why don't we say
3  10:30.
4           MS. SCOLARI:  That's fine.
5           THE COURT:  I will see you all on August 12 at 10:30.
6           (Adjourned)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25