# EXHIBIT 18



MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

April 6, 2017

**BY ELECTRONIC MAIL**

Brian Roger Blais
Aimee Hector
Rebecca Gabrielle Mermelstein
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

    Re:    *United States v. Galanis, et al.*, No. S1 16 Cr. 371 (RA)

Dear Brian, Aimee, and Rebecca:

    We represent Devon Archer. We write in regards to the search warrants directed to Google and Apptix that call for e-mails and other data in accounts associated with our client and that of Sebastian Momtazi.

## BACKGROUND

    As we have previously represented, rough searches of the emails in the relevant accounts indicate that they contain at least approximately 9,000 documents from within the warrants' date range that may implicate the attorney-client privilege. Mr. Archer's original motion before the District Court and his subsequent Second Circuit appeal, mandamus petition, and motion for a stay pending appeal were all animated by his profound concerns regarding the government's invasion of these privileged communications, which concerns have been laid out in detail.

    At this point, an incredibly large volume of privileged (not to mention irrelevant) information has been produced to the government pursuant to the warrants,[1] and we accordingly wish to put in place procedures designed to safeguard the privilege and ensure that privileged information does not taint the continued litigation of this case. Of course in proposing such procedures, Mr. Archer does not in any way waive his right to challenge the appropriateness of

---

[1] As you know, we had a telephone call on the morning of April 3, 2017 to discuss the warrants. During that call, you stated that both Google and Apptix had now produced account information to the government in response to the warrants, and that the government would produce everything it received from those third parties to Mr. Archer in the next few days. As of the date of this letter, we have still not yet received that production.



the warrants or to seek to suppress the use of any evidence derived, directly or indirectly, from them, including on the grounds that privileged materials have tainted the prosecution.

Indeed, the government has recognized that it will bear the consequences of failing to appropriately ensure that Mr. Archer's privilege is not breached. The government stated in its written response to Mr. Archer's motion in the District Court that it intended to "use a wall AUSA or taint team to review the defendant's emails for privilege," and invited Mr. Archer's counsel to provide a list of attorney names to use in identifying privileged documents. The government reiterated and expanded upon this commitment at the January 31, 2017 conference before Judge Abrams:

> To the extent that there are privileged communications, we take [Archer's counsel] obviously at his word that there are, and we are happy to run whatever lawyers' names defense proffers through and segregate those things. Ultimately, the risk is on the government. If it turns out that that gives rise to a suppression motion because [Archer's counsel] doesn't like the way it's been done, then he can bring that motion, . . . and if that risk is on the government, then that risk is on the government.

Jan. 31, 2017 Hr'g Tr. at 16:15-24; *see also id.* at 18:21-22 ("THE COURT: . . . As Ms. Mermelstein noted, the risk is on the government.").

The Court also asked at the January 31 conference whether the government would "be willing to meet with defense counsel, as was suggested, and try to agree upon a protocol for reviewing the documents." *Id.* at 16:25-17:2. Counsel for the government responded that the government was, "of course, happy to discuss a protocol with defense counsel," including "what search terms we want and whether or not there are additional search terms that need to be added, etc." *Id.* at 17:3-8. The government relied on these same representations in successfully moving to dismiss Mr. Archer's Second Circuit appeal:

> [T]he Government has already stated that it is prepared to work with counsel for Archer and Cooney regarding the parameters of the review. During the status conference before Judge Abrams during which Archer's motion was discussed, the Government stated on the record, "To the extent that there are privileged communications, we take [Archer's counsel] obviously at his word that there are, and we are happy to run whatever lawyers' names defense proffers through and segregate those things." (Tr. 16). Because the review protocol has not yet been implemented and because the Government has indicated its willingness to consider the views of counsel for Archer . . . before finalizing the review protocol, Archer cannot demonstrate that his purported harm is "actual or imminent."

Feb. 10, 2017 Affirmation of Brian R. Blais ¶ 41.



## THE GOVERNMENT'S PROPOSED REVIEW PROTOCOL

First and foremost, Mr. Archer agrees that it is imperative that the government adopt and finalize, and then strictly adhere to, a "review protocol" to ensure protection of the privilege.

When we spoke on April 3rd, you informed me that the government's current intention was to take the following steps to review the Google and Apptix material for privilege:

1. Run a list of search terms provided by counsel for Mr. Archer and Mr. Momtazi to segregate potentially privileged documents. You informed us that if the government for any reason rejects a proposed search term, you will inform us of that fact so that we may discuss the issue further.

2. Have a "wall" AUSA review the potentially-privileged materials.

3. If the "wall" AUSA determines that material is not privileged, it will be released to the prosecution team. If the "wall" AUSA determines that material is privileged, it will be withheld from the prosecution team. If the "wall" AUSA has questions, he or she will "seek guidance."

A.   **The Government's Proposed Review Protocol Is Deeply Problematic**

As you are aware a number of courts have criticized the practice of using a "wall" AUSA to conduct a privilege review generally. *See, e.g., see In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006); *United States v. Kaplan*, No. 02 Cr. 883 (DAB), 2003 WL 22880914, at *12 (S.D.N.Y. Dec. 5, 2003); *United States v. Hunter*, 13 F. Supp. 2d 574, 583 & n.2 (D. Vt. 1998); *In re Search Warrant for Law Offices Executed on Mar. 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994). In this case, however, the specific review protocol suggested by the government raises additional concerns.

*First,* the identity of the "wall" AUSA is important. When we spoke, you were not yet able to tell me who the "wall" AUSA will be, or whether that person will be a member of the Securities and Commodities Fraud Task Force (*i.e.*, the unit within the Office that is handling the prosecution of this case), or whether the wall AUSA will be supervised by the same people that supervise the prosecution team. In order to maintain a true "wall," it is obviously critical that anyone exposed to privileged material be entirely isolated from the prosecution team, meaning that they do not come from the same office or report to the same supervisors.

*Second*, your response that, in the event of a question, the wall AUSA will "seek guidance" is a potentially problematic one. To the extent that the wall AUSA merely seeks a second opinion or a sounding board, it is imperative that the person they speak to be pre-designated so that the same standards that apply to the wall AUSA can apply to the person from whom they seek guidance. More problematic, though, was your suggestion when we spoke that the wall AUSA may "seek guidance" from the prosecution team itself. There is no circumstance in which this should happen: simply put, there is no "wall" between the AUSA with access to



privileged materials and the prosecution team if the two are allowed to speak freely.  Making decisions about whether a document is privileged has nothing whatsoever to do with the work of the prosecution team, or the facts of the case – it turns only on whether an attorney and client are communicating in confidence, for the purposes of giving or receiving legal advice.  *See generally In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 324 (S.D.N.Y. 2003) (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984)).[2]

*Third*, and most troublingly, you suggested that the wall AUSA may be tasked with deciding whether the so-called "crime-fraud exception" applies to otherwise privileged documents.  It would be profoundly inappropriate for the government to unilaterally determine that a document fell within the crime-fraud doctrine, however, or for that determination to be made as part of the privilege review itself.  For example, in *United States v. Levin*, Judge Forrest was deeply critical of the government's practice of a wall AUSA bringing a motion for a ruling that the crime-fraud exception applied to certain otherwise-privileged documents recovered as the result of a search warrant.  She reasoned:

> The Court believes that the practice of having the Wall AUSA file a motion for application of the crime-fraud exception on behalf of the prosecution team conflicts with the Wall AUSA's intended role to prevent overbreadth of the Government's seizure of material pursuant to a search warrant. In the Wall AUSA's circumscribed role, he or she is not supposed to affirmatively act on behalf of the prosecution. Several courts in this district have expressed concern over the very practice of utilizing a Wall AUSA to conduct an initial review of seized material for potential privilege issues in the first instance. By bringing the instant motion, the Wall AUSA has gone one step further. What the Court finds particularly problematic in this instance is that the Wall AUSA, at least implicitly, bases her motion on her substantive awareness of the content of the documents at issue. This raises the potential Fourth Amendment concerns the ethical wall was intended to avoid

Id. at *2 (internal citations and footnotes omitted).

What the government proposes to do here – having the wall AUSA unilaterally and without process determine whether the crime-fraud exception applies – goes at least one step further still, and effectively converts the wall AUSA into a member of the prosecution team.  This stands the purpose of "taint teams" on their head, and would allow the government to

---

[2]  Of course, whether a communication is privileged is sometimes a fact-bound question, but it is not a question that *anyone* in the government has the facts to adequately answer, because those facts are necessarily part and parcel of the privilege.  It is for that reason that we propose below an alternative review protocol in which Mr. Archer – the holder of the privilege – makes the initial privilege determination.



substantively benefit from the wall AUSA's having had access to the contents of privileged communications. *See id.* ("As the wall is for the protection of the *defendant's* rights, it is decidedly not to give the Government a substantive look into that which it has no right to see."); *see also id.* at *2 n.5 ("when a Wall AUSA uses the very information seen to make a motion in the Court in which the criminal matter is being prosecuted, that Wall AUSA has stepped into substantive participation in the case.").

In short, the review protocol envisioned by the government, in addition to unnecessarily endangering the attorney-client privilege, is deeply flawed.

**B.   The Government Must Carefully Document, in Writing, its Review Protocol**

Especially in light of the numerous problems with the government's proposed review protocol, on behalf of Mr. Archer, I reiterate my request that the government document its review protocol *in writing* so that there is no ambiguity about how the government has decided to undertake and actually conducted the review.

At a minimum the government should document, *in writing*, the following:

a. The terms and methodology used to isolate potentially privileged documents from presumptively non-privileged ones.

b. The review protocol as adopted, and the complete set of instructions and information given to the wall AUSA to follow in conducting his or her review, including the procedures for how and from whom to "seek guidance."

c. The contents and other particulars of any communications between the wall AUSA and anyone else on the subject of the review, including supervisors.  In the event that the government chooses to permit the wall AUSA to speak to the prosecution team or its supervisors – something that we reiterate should never happen – those communications *themselves* should all be in writing so that they are clear and unambiguous.

d. The manner in which the wall AUSA conducts her or her review, including his or her decision about which documents are privileged or non-privileged, and why.

### MR. ARCHER'S PROPOSED REVIEW PROTOCOL

The far better – and far safer – way to proceed would be to allow Mr. Archer to conduct the privilege review himself, just as he would with respect to a subpoena.  We therefore propose a slightly modified version of the protocol adopted by the Sixth Circuit when faced with similar circumstances in *In re Grand Jury Subpoenas*, 454 F.3d 511.  *See also Levin*, 2015 WL 5838579 (after execution of search warrant, arguably privileged documents were segregated and provided to defense counsel to review and assert claims of privilege).  Specifically, we propose that:

1. Mr. Archer's counsel run the attached search terms (which were compiled jointly by Mr. Archer and Mr. Momtazi's lawyers) against the information produced by Google



      and Apptix, to identify potentially-privileged documents. The documents would then be split into two batches: those that hit on the search terms, and those that did not.[3]

2. Any document that does *not* hit on one of the search terms will be immediately produced to the government to review, subject to the terms of the warrants.[4] Of course, a list of search terms cannot substitute for a true privilege review, and Mr. Archer would reserve the right to "claw back" any privileged document that evaded the review terms. Likewise, the government would still have to be alert to the possibility that a privileged document might have been inadvertently produced.

3. Mr. Archer's counsel would conduct a privilege review of those documents that do hit on one or more of the search terms:

    a. Any documents that we determine to be non-privileged will be produced to the government to review, subject to the terms of the warrants.

    b. Any documents that we determine to be partially privileged will be appropriately redacted, and the redacted version produced to the government to review, subject to the terms of the warrants.

    c. Any document that we determine to be privilege will be withheld and put on a privilege log. This log will "contain summary information, as well as some intelligible explanation of [Mr. Archer's] privilege claims, for each document" that it lists. *In re Grand Jury Subpoenas*, 454 F.3d at 524.

4. In the event that the government believes that a document has been wrongly withheld as privileged, the parties can meet and confer and/or the government can challenge the designation in court.

      In Mr. Archer's view, the approach outlined above would obviate the concerns that the government has repeatedly raised regarding any potential delay in its review of the fruits of the warrants. *See*, *e.g.*, *id.* at 523-24 (stating that, where one is "only to conduct a privilege review

---

[3]     Mr. Archer would also be willing to discuss having the Court employ a Special Master to run the search terms and separate the two batches of documents, if the government believes that is necessary. *See In re Grand Jury Subpoenas*, 454 F.3d at 524 (ordering use of Special Master who would "conduct a word search of the documents, searching for those words contained in the list," and who would "then separate documents containing any of those words from the rest.").

[4]     Obviously, many, many documents – both privileged and non-privileged – will not be responsive to the warrants because they will have nothing to do with the subject matter of this case. Mr. Archer believes that potentially relevant documents should be isolated before any privilege analysis is performed in order to avoid unnecessary time and expense analyzing irrelevant documents for privilege. This can be accomplished by generating a list of responsiveness search terms and using them to make a first cut. Indeed, Mr. Archer has already agreed upon such a list with the SEC.



of the subset of documents that contain names of attorneys or law firms that they will place on a list that will then be provided to the government, assuming this 'first cut' proceeds apace, the government should obtain the bulk of the responsive documents rather quickly," and that the employment of a Special Master to segregate potentially privileged documents would "ensure that the first cut does, in fact, proceed in a timely fashion").

*     *     *

We look forward to discussing the above with you, and to working together to craft a review protocol that effectively protects the attorney-client privilege.

        Respectfully,

        /s/  Matthew L. Schwartz
        Matthew L. Schwartz

cc:    Silvia Serpe, Esq.
       *Counsel to Sebastian Momtazi*



**Search Terms to be Segregated for Privilege Review**

| | | |
|---|---|---|
| ac | eno | kim* w/5 miller |
| acp | esq* | *klasko* |
| advice | exhibit* | *klaskolaw* |
| advise | external w/5 attorney* | *klaskolaw.com |
| affidavit* | external w/5 counsel* | kmiller* |
| ainsztein | external w/5 lawyer* | konigsberg |
| aneuman* | eweiss* | langston |
| "anticipation of litigation" | firm* | law* |
| arnold w/5 porter | gc | lawyer* |
| apks | gottlieb | legal* |
| *apks.com | *gunder* | legal* w/5 analy* |
| ariel w/5 neuman | *gunder.com | legal* w/5 advice |
| attorney* | gunderson | legal* w/5 advise |
| attorney* w/5 client | hbiden* | legal* w/5 review* |
| attorney* w/5 priv* | heather w/5 king | litigat* |
| atty | hodgson w/5 russ | mark w/5 hunter |
| att'y | *hodgsonruss* | megan w/5 burke |
| biden | *hodgsonruss.com | Mcsweeney |
| "bird marella" | *htflawyers* | Mdhunter* |
| *birdmarella* | *htflawyers.com | mhunter* |
| *birdmarella.com | *htwlaw* | naveen |
| boies | *htwlaw.com | neuman |
| boise | hunter | nicelli |
| brian w/5 patterson | hunter@rstp.com | outside w/5 attorney* |
| *bsfllp* | *huntertaubmanlaw* | outside w/5 counsel* |
| *bsfllp.com | *huntertaubmanlaw.com | outside w/5 lawyer* |
| *ckr* | in house" w/5 attorney* | pai |
| *ckrlaw* | in house" w/5 counsel* | plaintiff* |
| *ckrlaw.com | in house" w/5 lawyer* | pozharskyi |
| claim* | inside w/5 attorney* | priv* |
| confid* | inside w/5 counsel* | protect* |
| compliance | inside w/5 lawyer* | schwartz |
| counsel* | internal w/5 attorney* | schwerin |
| counterclaim* | internal w/5 counsel* | seltzer |
| culhane | internal w/5 lawyer* | sweiss* |
| cwolff* | jason w/5 ford | *theseltzerfirm* |
| declaration* | *johnnicelli* | *theseltzerfirm.com |
| defendant* | *johnnicelli.com | *serperyan* |
| direction w/5 attorney* | joseph w/5 park | *serperyan.com |
| direction w/5 counsel* | justice | sheckart |
| direction w/5 lawyer* | kalsko | sec |
| "document retention notice" | "kaye scholer" | securit* w/5 commission |
| doj | *kayescholer* | securit* w/5 exchange |
| dunn | *kayescholer.com | subp* |
| edell | kelly w/5 vazquez | testi* |



| | | |
|---|---|---|
| "united states" w/5 attorney* | vallacher | workproduct* |
| "united states" w/5 office | wechter | work-product* |
| usao | weiss | wp |
| us w/5 attorney* | wolff | wpd |
| us w/5 office | *wolfflawfirm* | zeejah |
| vadym | *wolfflawfirm.com | *zeejahlaw* |
| vadym.pozharskyi* | *wolff.law | *zeejahlaw.com |
| | work w/5 product | |